James H. COKER et al., Appellants,

v.

WESCO MATERIALS CORPORATION,
Appellee.

No. 3811.

Court of Civil Appeals of Texas.

Eastland.

May 10, 1963.

James C. Tubb, Dallas, for appellants.

Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellee.

COLLINGS, Justice.

James H. Coker and James B. Tuggle brought separate suits against Wesco Materials Corporation for the alleged breach of employment contracts. The cases were consolidated and the motion of the defendant for a summary judgment was granted. Coker and Tuggle have appealed.

Appellants present one point of error in which it is contended that the court erred in sustaining the motion for summary judgment of Wesco Materials Corporation, hereinafter referred to as Wesco. Appellants urge that the pleadings, depositions and affidavits before the court presented questions of fact concerning the existence of appellants' alleged causes of action.

In the pleadings of appellants it is contended that each of them was employed by Wesco for a period of one year at specified salaries to perform certain duties. The contracts of employment were in letter form, signed or countersigned by Thomas L. Amis, Vice-President of Wesco. Wesco's pleading contained a general denial and further allegations that appellants had breached their contracts of employment in that they failed to render satisfactory performance and that willful conduct by appellants detrimental to the welfare of Wesco necessitated termination of their employment. Wesco filed a motion for summary judgment alleging that there was a provision in the employment contracts to the effect that appellants' employment was contingent upon satisfactory performance on their part; that the performance of Tuggle

and Coker was not satisfactory to Wesco and that no bona fide issue of fact existed upon which appellants could show a right to recover; that the record was undisputed that the performance of appellants was not satisfactory to Wesco. In support of Wesco's motion for summary judgment it filed and submitted certain depositions and affidavits. Appellants duly replied to the motion.

■ The contracts of employment relied upon by appellants are included in the record and by their express terms are contingent upon satisfactory performance by appellants Coker and Tuggle. The depositions and affidavits presented by Wesco show that Wesco contends it was not satisfied with the performance of Coker and Tuggle. Appellants contend that any dissatisfaction on the part of Wesco and its directors was feigned and without basis or justification. They contend and the record shows that everything they did as employees was known of and approved by Mr. Tom Amis, Vice-President and General Manager of Wesco, under whom they worked and who was instrumental in their employment. The general rule in such cases is that the employee may question the honesty and good faith of his employer's dissatisfaction, and that a feigned dissatisfaction is not sufficient justification to avoid the continuation of a contract of employment. The question of good faith thus may become a question of fact, the burden of proof being upon the employee to show that the claimed dissatisfaction is not in good faith. Golden Rod Mills v. Green, Tex. Civ.App., 230 S.W. 1089; Dallas Hotel Co. v. Lackey, Tex.Civ.App., 203 S.W.2d 557; 56 C.J.S. § 32, p. 418; 35 Am.Jur. 464; Atlas Torpedo Co. v. United States Torpedo Company, Tex.Civ.App., 15 S.W.2d 150.

The record presents most unusual and peculiar circumstances concerning appellants' employment and connection with appellee Wesco Corporation. It is undisputed that appellants were employed by the corporation in November 1960, as Assistant Directors of Industrial Engineering for a period of one year at an annual salary of $10,000.00. The record further shows that in April of 1961, Mr. Pickens, the President of Wesco, and its Board of Directors discovered that a secret group had developed among some of its officers and employees. The group was confined principally to the marketing department. It is undisputed that this group of employees had come under the influence of and gave its allegiance to a man by the name of Higginbotham, who was neither officer, director, stockholder nor employee of the corporation and of whose existence the President and Board of Directors had no knowledge whatever. Higginbotham purported to be a psychologist and business consultant and apparently was able to exert considerable control over those who came under his influence. Through Mr. Amis who was an officer in the company, Higginbotham was able to bring about the employment of men of his choice, in all a total of about 15 employees, including Mr. Robinson who was made an official in charge of the marketing division. In this manner Higginbotham acquired considerable control over the activities of the company. The members of this group referred to themselves as the marketing team. Each of them paid Higginbotham $50.00 per week out of their salaries for his instructive sessions. During a portion of the time they paid him an additional $25.00 per week for the purpose of hiring a private detective to shadow the President of the company. These employees of Wesco furnished Higginbotham with full confidential information of Wesco's sales, costs, production, financial condition and other private facts concerning the corporation. All of this was done without the knowledge of or authority from the Chairman of the Board of Directors, the President, or the controlling stockholders of the corporation. It was, however, done with the knowledge and approval of Amis, who was Vice-President and General Manager of the corporation. The business decisions of this group were dictated by Higginbotham. It is undisputed

that Higginbotham instructed such employees, including Coker and Tuggle to reimburse themselves for the $25.00 payments to be used for shadowing the President by padding their expense accounts. Appellants Coker and Tuggle denied that they padded their expense accounts in this connection but admitted that they made such payments to Higginbotham and that other employees of appellee did so reimburse themselves. Higginbotham admitted the receipt of these $25.00 payments and, when he was confronted with Wesco's knowledge of the fact, returned them to Wesco by a Cashier's check in the amount of $2,775.00. It is undisputed that appellants and the other employees who were under the control of Higginbotham were instructed by him to conceal from Wesco's President, Chairman of the Board, Board of Directors and controlling stockholders all facts concerning him. They were instructed to refer to Higginbotham only through the use of a code name "Roy Edwards." The record shows that when this situation was discovered by Wesco and confirmed by investigation such officers and employees, including Coker and Tuggle, were discharged. The discharging of the employees was done by the President of the corporation under the express authority and direction of a resolution of the Board of Directors.

There are many elements which properly bear upon satisfactory performance by an employee. In some types of work the personal taste, feeling, sensibility and individual judgment of the employer is highly material. In other types of employment mechanical ability and utility in relation to which recognized standards are available is the principal consideration. In Isbell v. Anderson Carriage Company, 170 Mich. 304, 136 N.W. 457, it was stated concerning the first mentioned type of employment that since the matter was personal to the employer it was therefore "his right to say whether he was satisfied or not" and that it should not be left to another to say that he ought to be satisfied.

In Hardison v. A. H. Belo Corp., Tex. Civ.App., 247 S.W.2d 167, (No writ history), it was stated as follows:

"Actually claimed, in short, is that the parties have entered into one of those familiar 'satisfaction' contracts; i. e., an agreement under which the employee undertakes to render services satisfactory to the employer and to which a different principle of law is clearly applicable. 6 A.L.R., Annotations, p. 1502. Under a contract to render satisfactory services it is not required that a reasonable ground for discharge should exist on part of the employer. It is merely necessary that he be honestly dissatisfied with the employee's work; in other words, that such dissatisfaction is real and not pretended."

█ In the instant case Wesco's dissatisfaction with appellants involves a fact situation and elements of satisfactory performance which are entirely different from those involved in the above cited cases. Wesco's dissatisfaction concerns the matter of appellants loyalty as employees of the corporation. Any employer has the right to expect loyalty from its employees. The evidence is undisputed that Coker and Tuggle knew that their actions as heretofore set out were not in accordance with the wishes of the President and Board of Directors of Wesco, but on the contrary their efforts were to please Higginbotham, and they kept many things secret from such top management. Without doubt Wesco is justified in its contention that appellants were disloyal. It is no defense for appellants to show that Amis and Robinson, who held official positions in the corporation were likewise disloyal to the management and encouraged appellants in such disloyalty. The evidence is undisputed that appellants were not loyal. The top management of Wesco says that it is dissatisfied with the performance of its employees Coker and Tuggle. There is no evidence or circumstances in the record which shows or tends to show that Wesco's dissatisfaction with

such disloyalty is feigned and that Wesco is in fact satisfied with the performance of appellants. In our opinion there is no disputed fact issue in the case to be determined by a fact finding body and the trial court properly entered a summary judgment for Wesco Materials Corporation.

The judgment is affirmed.