474 P.2d 490

**Kyriakos PETRITSIS, Plaintiff-Appellant,**

**v.**

**Loretta SIMPIER, now Loretta Brady, Leroy S. Tipton and Janie Tipton, Defendants-Appellees,**

**Hilb and Company, a corporation, et al., Intervenors-Appellees.**

**No. 9005.**

Supreme Court of New Mexico.

Sept. 14, 1970.

Wright & Kastler, Raton, for appellant.
William H. Darden, Raton, for Simpier.
John E. Hobbes, Raton, for intervenors.

## OPINION

McKENNA, Justice.

This appeal is also an outgrowth of the sale of a clothing retail business known as Duds for Dolls. See our opinion in Durrett v. Petritsis, 82 N.M. 1, 474 P.2d 487 filed today. It gives some of the background of this dispute.

Here, Petritsis, the appellant, sued Mrs. Loretta Brady and the Tiptons on a $6,400 note signed by them. The amount of the note equaled the down payment of $6,000 for the business purchased from appellee Durrett, plus $400 advanced by Petritsis for working capital. We referred to this note in Durrett v. Petritsis, No. 8982, supra. Petritsis attached the assets of Duds for Dolls which were then sold in a liquidation

sale. The funds realized were deposited with the court.

Mrs. Brady denied liability under the note, affirmatively alleging that she was induced to sign the note without receiving any consideration for it. The Tiptons filed their own answer generally admitting the complaint and further alleging that Mrs. Brady, in exchange for their interest in Duds for Dolls, agreed to assume all obligations of the business and hold them harmless, specifically including this note sued on. They asked that they have judgment over against Mrs. Brady for any judgment against them. A number of suppliers, creditors of the business, intervened to establish prior rights to funds in the registry of the court. The case was tried to the court without a jury.

The district court entered judgment for the defendants on the note; against the Tiptons on their cross-claim against Mrs. Brady, and determined that the creditors of the business had prior right to the funds deposited in court.

Under his argument and authorities of his brief-in-chief, the appellant lists six points. Point I is an attack on twenty-three findings as not supported by substantial evidence and contrary to the evidence. Point II is an attack on ten conclusions. Point III complains of the court's failure to adopt some 26 requested findings. Point IV states that the court erred in refusing to adopt two requested conclusions. Point V relates to the intervenors and alleges that if the appellee Mrs. Brady was the owner of the business, then the plaintiff's attachment proceedings are prior to the intervenors' rights; if the appellant is determined to be the owner, then the intervenors have no lien on the funds until they prove their claims against the appellant. Point VI is a general attack on the judgment as not supported by substantial evidence and contrary to law.

In the argument portion of his brief, the appellant has lumped together all of these six points. No authorities are cited. Testimony is quoted, with comments thereon, in one continuous flow without reference to any particular point, finding or conclusion made or refused. The appellant complains of the court's failure to make certain findings, but the statement of proceedings does not contain a concise summary of the facts which the appellant says should have been found, nor is there any reference to the transcript showing the requests for such findings. This is not a compliance with our Rules. See Rules 15(14) (d) and 15(16) (c) (§ 21–2–1, N.M.S.A.1953 [1969 Supp.]). Despite these failures, we will consider the basic questions presented.

With the exception of a particular point raised as to the intervenors, the appellant's argument is that the judgment is not supported by substantial evidence and is contrary to law, and that the court erred in denying his requested findings and conclusions and adopting its own generally to the effect that there was no consideration received by Mrs. Brady and the Tiptons for executing the $6,400 note.

We first take up the suit on the note. At the outset, we reiterate the rules and standards governing our review to determine if there is substantial evidence, which we enumerated in our opinion in the companion case, Durrett v. Petritsis, supra. The presumptions are in favor of the findings of the court and the facts are to be viewed in the aspect most favorable to the prevailing parties. If, when so viewed, together with all reasonable inferences, the evidence supports what the court found, all contrary evidence is to be disregarded. It is the trial court's province as the trier of facts to weigh the testimony and to say which is to be given credence and what is to be disbelieved. Martinez v. Trujillo, 81 N.M. 382, 467 P.2d 398 (1970); Rein v. Dvoracek, 79 N.M. 410, 444 P.2d 595 (Ct. App.1968). The trial court found that Petritsis was at all material times the owner of the business and the defendants were not indebted under the note and concluded that the note signed by the defendants was a sham and wholly without consideration.

Mrs. Brady testified that she and Petritsis were dating; that she did not request

him to purchase the business for her; that he purchased it to provide an income for them after their marriage; that he put her and Mrs. Tipton in the store to run it for him; that he wanted her to hold herself out as the owner, which she did in a number of ways. There was also testimony that Petritsis later tried to resell the business, negotiating with prospective buyers as the owner. No bill of sale or any conveyance of the business was ever made to Mrs. Brady and the Tiptons. She further testified that Petritsis requested her to sign the note although she did not know why since he was to be responsible.

The Tiptons and Petritsis did not agree with Mrs. Brady's testimony. The Tiptons thought they were purchasing the business or a proportionate part of it, and considered themselves liable under the note. The court specifically found that the Tiptons' answer admitting liability was prepared for them by Petritsis' attorney and filed at Petritsis' request. This fact of course went to the weight of their testimony and their credibility as to the issues raised concerning liability under the note and the ownership of the business.

The appellant did not contend in the trial court that the defendants Tipton should be held liable to him because of their answer and admissions, regardless of a judgment in favor of the other defendant and the intervenors. He did request finding No. VI which reads:

"That the Defendants, Leroy Tipton and Janie Tipton, admit, both in their verified answer on file herein and in their testimony in this cause, all the allegations contained in the second cause of action of Plaintiff's complaint."

But he did not request a conclusion for a judgment against defendants Tipton only, as required by Rule 52(B) (a) (6) (§ 21–1–1(52) (B) (a) (6), N.M.S.A.1953). His brief objects to the trial court's refusal to adopt 26 requested findings, which includes the requested finding No. VI, but he makes no particular point of the failure to find No. VI with argument and authorities. To present a point for our consideration, an appellant must submit argument and authorities thereon as required by Rule 15(14) (d), supra. An error claimed must be specifically stated and argued. Irwin v. Lamar, 74 N.M. 811, 399 P.2d 400 (1964).

As to the note, it is true that upon proof of the execution of a note consideration is presumed, but this may be rebutted by evidence which shows or tends to show lack of consideration. Hutchison Lumber Co. v. Boney, 72 N.M. 194, 382 P.2d 525 (1963). There we observed, at 199, citing Lane v. Mayer, 33 N.M. 28, 262 P. 182 (1927), that a defense of no consideration by a joint maker is not a defense unless there is proof that no consideration was received by his joint makers or other third parties. Petritsis' case was that the defendants purchased the business, were the owners and that they executed the note as payment for the balance of the purchase price and a business loan of $400. The court found that there was no agreement for Petritsis to act as the agent for the defendants in purchasing Duds for Dolls, nor did the parties ever contract for the sale of the business by Petritsis to the defendants after its acquisition from Durrett. From all the evidence, the court found that at all material times Petritsis was the owner of the business and concluded that the note was wholly without consideration and procured as a "sham," and consequently Petritsis could not recover under it. We have made the foregoing comments despite the failure of the appellant to cite Hutchison Lumber Co. v. Boney, supra, or Lane.v. Mayer, supra, or argue their impact.

There was substantial evidence for the findings made and the conclusions objected to flowed naturally and as a matter of law from the facts as found by the court. It follows then that the findings and conclusions requested and denied, in support of the validity of the note, were properly rejected.

The appellant in his reply brief says he would feel safe in resting his case for re-

**8**

versal on the following testimony of Mrs. Brady:

"Q And, why did you refuse to pay Mr. Durrett the payment on the note that was due in February?

"A When Mr. Petritsis demanded his money in full, I couldn't pay it. He knew that, and there was no way that I could get it at the time, and he wasn't willing to let me go ahead and try, to where I could pay him eventually, and I was losing money the other way, so I stopped payment with Mr. Durrett, so that he would take some kind of action."

It was quite permissible to infer and believe that Mrs. Brady could not pay the install-ment from the store's revenue rather than that such answer constituted an admission of personal liability on the note or that she was the owner of Duds for Dolls.

■■■ There is one remaining point which concerns the intervenor creditors. The appellant argues that the intervenors have no claim or lien on the funds until each proved a valid claim against him since there is no lien given a general creditor against merchandise sold on open accounts. The court found that Petritsis was indebted to the intervenors on their claims, that at all material times he was the owner of the business and that the intervenors had a claim upon the proceeds of the attachment sale superior to the attachment rights of Petritsis.

What Petritsis did was attach his own merchandise, not being a creditor of the business, at the expense of the true credi-tors. A liquidating sale followed without any notice to the creditors. Presumably, for all practical purposes, the merchandise sold could not be recovered but the funds received from the sale were intact. We do not deem it necessary to examine our Bulk Sales law and the rights of creditors under such circumstances, for it is apparently in-equitable and contrary to good conscience to allow Petritsis to enrich himself at the ex-pense of his creditors through and under the guise of a spurious attachment pro-

ceeding. Certainly, the creditors had a right not to be denied the opportunity to re-cover the money owed them by execution on the merchandise. The merchandise was ap-propriated wrongfully by Petritsis but the funds received were intact under the court's control. We think that the creditors in the very least had an equitable claim or lien prior to Petritsis. In fact, the situation is quite classic for the imposition of an equit-able lien. See 51 Am.Jur.2d, Liens, § 24. The court did not err in recognizing the in-tervenors' claims as superior to any claim of Petritsis.

We will not award damages for the tak-ing of the appeal. See our opinion in the companion case, Durrett v. Petritsis, 82 N.M. 1, 474 P.2d 487.

The judgment is affirmed. It is so order-ed.

COMPTON, C. J., and WATSON, J., concur.