587 P.2d 444

## LAS LUMINARIAS OF the NEW MEXICO COUNCIL OF THE BLIND, Plaintiff-Appellant,

v.

Chris S. ISENGARD, Kenneth L. Watkins, Leo Hollins, Barbara J. Thrash, Career Services for the Handicapped, Inc., City of Albuquerque, County of Bernalillo, Office of Comprehensive Employment and Training Administration, Orlando D. Sedillo, Community Development Administration, James J. Jaramillo, Defendants-Appellees.

No. 3459.

Court of Appeals of New Mexico.

Nov. 7, 1978.

Narciso Garcia, Jr., Toulouse, Krehbiel & DeLayo, P.A., Albuquerque, for plaintiff-appellant.

Albert Simms, Albuquerque, for defendants-appellees.

## OPINION

LOPEZ, Judge.

Plaintiff-appellant filed a complaint containing four counts against defendants-appellees and other defendants not involved in this appeal. These latter defendants are the City of Albuquerque, the County of Bernalillo, the Office of Comprehensive Employment and Training Administration, Orlando D. Sedillo, Community Development Administration and James C. Jaramillo. Counts I, III and IV request injunctive and declaratory relief and an order of mandamus against certain of these defendants. Count II seeks damages from appellees based upon a theory of civil conspiracy. With respect to these four counts, the trial court granted appellees' motion for dismissal for failure to state a cause of action under Rule 12(b)(6) of the New Mexico Rules of Civil Procedure. Section 21-1-1(12)(b)(6), N.M.S.A.1953 (Repl. Vol. 4, 1970). Appellant appeals from this order of dismissal. We reverse and remand.

The issue presented on appeal is whether the trial court erred in dismissing appellant's complaint under Rule 12(b)(6). In determining this issue, we note that no argument is addressed to the trial court's dismissal of Counts I, III and IV for failure to state a cause of action. Accordingly, the order of the court is affirmed insofar as it relates to these counts. Section 21-2-1(15)(14)(d), N.M.S.A.1953 (Repl. Vol. 4, 1970); *Perez v. Gallegos,* 87 N.M. 161, 530 P.2d 1155 (1974); *Petritsis v. Simpier,* 82 N.M. 4, 474 P.2d 490 (1970).

In determining whether a complaint states a claim upon which relief can be granted, we assume as true all facts well pleaded. *Ramsey v. Zeigner,* 79 N.M. 457, 444 P.2d 968 (1968); *Jones v. International*

*Union of Operating Engineers,* 72 N.M. 322, 383 P.2d 571 (1963). In addition, a motion to dismiss a complaint is properly granted only when it appears that the plaintiff cannot recover or be entitled to relief under any state of facts provable under the claim. *Hall v. Budagher,* 76 N.M. 561, 417 P.2d 71 (1966); *Jones v. International Union of Operating Engineers, supra.* Only when there is a total failure to allege some matter which is essential to the relief sought should such a motion be granted. *Pillsbury v. Blumenthal,* 58 N.M. 422, 272 P.2d 326 (1954); *Michelet v. Cole,* 20 N.M. 357, 149 P. 310 (1915). Moreover, a motion to dismiss for failure to state a claim is granted infrequently. *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service,* 400 F.2d 465 (5th Cir. 1968).

■ New Mexico adheres to the broad purposes of the Rules of Civil Procedure and construes the rules liberally, particularly as they apply to pleading. As the New Mexico Supreme Court stated in *Carroll v. Bunt,* 50 N.M. 127, 130, 172 P.2d 116, 118 (1946):

> The general policy of the Rules requires that an adjudication on the merits rather than technicalities of procedure and form shall determine the rights of the litigants.

■ To constitute an actionable civil conspiracy, there must be a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Bourland v. State,* 528 S.W.2d 350 (Tex.Civ.App.1975); *International Bankers Life Insurance Company v. Holloway,* 368 S.W.2d 567 (Tex. 1963); *Boman v. Gibbs,* 443 S.W.2d 267 (Tex.Civ.App.1969); 16 Am.Jur.2d *Conspiracy* § 43 (1964). Civil conspiracy is not of itself actionable; the gist of the action is the damage arising from the acts done pursuant to the conspiracy. *Armijo v. National Surety Corp.,* 58 N.M. 166, 268 P.2d 339 (1954); *Lindbeck v. Bendziunas,* 84 N.M. 21, 498 P.2d 1364 (Ct.App.1972); *Barber's Super Markets, Inc. v. Stryker,* 84 N.M. 181, 500 P.2d 1304 (1972), *cert. denied,* 84 N.M. 180, 500 P.2d 1303 (1972). Generally, to state a cause of action for conspiracy, the complaint must allege: (1) the existence of the conspiracy; (2) the wrongful act or acts done pursuant to the conspiracy; and (3) the damage resulting from such act or acts. *James v. Herbert,* 149 Cal.App.2d 741, 309 P.2d 91 (Ct.App.1957); *see also Wu v. Keeney,* 384 F.Supp. 1161 (D.D.C.1974), *aff'd mem.* 174 U.S.App.D.C. 71, 527 F.2d 854 (1975); *Black & Yates v. Mahogany Ass'n, Inc.,* 129 F.2d 227 (3d Cir. 1941), *cert. denied,* 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942); *Browning v. Blair,* 169 Kan. 139, 218 P.2d 233 (1950). The existence of the conspiracy must be pled either by direct allegations or by allegation of circumstances from which a conclusion of the existence of a conspiracy may be reasonably inferred. 16 Am.Jur.2d *Conspiracy* § 58 (1964); *accord, Nardyz v. Fulton Fire Ins. Co.,* 151 Kan. 907, 101 P.2d 1045 (1940).

With respect to Count II, appellant in its complaint makes the following allegations: (1) plaintiff is a non-profit organization which provides training and job development services to the severely disabled of the Albuquerque-Bernalillo County area; (2) defendants, Chris S. Isengard, Kenneth L. Watkins, Leo Hollins and Barbara J. Thrash, are former employees of plaintiff; before the hiring of these defendants, plaintiff was a strong, healthy organization; (3) defendant, Office of Comprehensive Employment and Training Administration (OCETA), is a federally funded program of the United States Department of Labor and acts as the administrative support organization for the Albuquerque-Bernalillo County Manpower Programs; (4) defendants, the City of Albuquerque and Bernalillo County, formed a consortium to serve as prime sponsor of the Comprehensive Employment and Training Act (CETA) in the Albuquerque-Bernalillo County area; (5) defendant, Community Development Administration (CDA), is an agency created by the Council of the City of Albuquerque to supervise activities authorized by the Congress of the United States under Title I of the Housing and Community Development Act of 1974; (6) funds were made available by the feder-

al government to the City of Albuquerque and County of Bernalillo as prime sponsor under the CETA program for fiscal year 1977–1978; $57,360.00 of such funds were channeled by the prime sponsor into OCETA to be used for services to the handicapped; (7) funds were also made available to the City of Albuquerque by the federal government under the Housing and Community Development Act for fiscal year 1977–1978; $30,000.00 of such funds were channeled by the City of Albuquerque into CDA to be used for services to the handicapped; (8) Joint Requests for Proposals (RFP) were delivered to applicants for these funds; (9) the resulting contract with the selected agency for delivery of services to the handicapped included the two categories of funding in one contract; (10) plaintiff received a RFP and began preparation of its proposal; defendants, Isengard, Watkins, Hollins and Thrash, were all employed by plaintiff during the preparation of plaintiff's proposal and all had access to plaintiff's corporate records and documents; (11) during the course of their employment, these defendants owed plaintiff a duty of loyalty, a duty to serve faithfully and be regardful of the interests of plaintiff, a duty to discharge carefully their duties to plaintiff, a duty to conduct themselves in such a manner as not to destroy or to threaten the financial existence of plaintiff and a duty to avoid competition with plaintiff through the use of confidential information obtained during the course of their employment; (12) these defendants were instrumental in the formation and incorporation of defendant, Career Services for the Handicapped, Inc., (hereinafter referred to as Career); this corporation was organized to apply for the same two categories of funding; (13) while employed by plaintiff, these defendants actively worked on the preparation of a proposal to be submitted on behalf of Career and used plaintiff's records and papers to prepare this competitive proposal; (14) in forming this new corporation and using plaintiff's records and papers to prepare Career's proposal, these defendants violated the duties they owed to the plaintiff; (15) plaintiff submitted its proposal to CDA and OCETA; (16) similarly, a proposal was submitted on behalf of Career; the proposal of Career included the resume of its proposed director, defendant Isengard; (17) it was the unanimous opinion of the Technical Review Panel of OCETA that the contract for services should be awarded to plaintiff; of all the proposals submitted, plaintiff's proposal received the highest points in three evaluations based upon points; (18) defendants, Isengard, Watkins, Hollins and Thrash, made it known to the OCETA and CDA staffs that if plaintiff were awarded the contract, they would resign from their employment with plaintiff, and if Career were funded, they would seek employment with it; (19) the Executive Task Force of the OCETA Planning Board recommended that the contract be awarded to Career; (20) the contract was awarded to Career; (21) defendants, Isengard, Watkins, Hollins and Thrash, conspired and combined among each other and with Career and others to prevent the award of the contract to plaintiff; (22) as a result of this conspiracy, the contract was awarded to Career and plaintiff's offices will have to be closed; (23) this conspiracy and combination was a willful and wanton violation of the duty of loyalty owed by these defendants to plaintiff; and (24) due to the actions of these defendants, plaintiff has been damaged in the amount of $87,-360.00.

To summarize, appellant alleges that appellees combined to accomplish a lawful purpose, i. e. participation in a public competition for public funds, by unlawful means, i. e. by breaching their duty of loyalty to appellant. In response, appellees contend that appellant's allegations do not state an actionable civil conspiracy. They base this contention upon two grounds. First, they argue that appellees' actions did not constitute a breach of their duty of loyalty to appellant but instead were merely preparations to compete with appellant at the expiration of their employment. Secondly, they argue that, since appellant is a non-profit corporation dependent upon public funds for its existence, the usual

duty of loyalty owed an employee to an employer should be viewed in the light of another general duty of loyalty owed to the public. Appellees conclude that the effect of such a viewing is to subject a non-profit corporation dependent upon public funding to the risk of competition for such funding from any other member of the public, including its own employees. We will answer each argument separately.

### Appellees and their Duty of Loyalty

It is well settled that the employment relationship is one of trust and confidence and places upon the employee a duty to use his best efforts on behalf of his employer. *C–E–I–R, Inc. v. Computer Dynamics Corporation,* 229 Md. 357, 183 A.2d 374 (Ct.App.1962); *accord, Berry v. Goodyear Tire and Rubber Company,* 242 S.E.2d 551 (S.C.1978); *Town and Country House and Homes Service, Inc. v. Evans,* 150 Conn. 314, 189 A.2d 390 (1963); *Coker v. Wesco Materials Corporation,* 368 S.W.2d 883 (Tex. Civ.App.1963); 53 Am.Jur.2d *Master and Servant* § 97 (1970); Restatement (Second) of Agency, § 387 (1958). The general rule is that he who undertakes to act for another in any matter of trust or confidence shall not in the same matter act for himself against the interest of the one relying upon his integrity. *Rice v. First Nat. Bank in Albuquerque,* 50 N.M. 99, 171 P.2d 318 (1946); *Canfield v. With,* 35 N.M. 420, 299 P. 351 (1931). Concern for the integrity of the employment relationship has led courts to establish a rule that demands of a corporate officer or employee an undivided and unselfish loyalty to the corporation. *See Guth v. Loft, Inc.,* 5 A.2d 503 (Del.1939); *Maryland Metals, Inc. v. Metzner,* 282 Md. 31, 382 A.2d 564 (Ct.App.1978).

There exists, however, an exception to this general requirement of loyalty. Thus an employee does not violate his duty of loyalty when he merely organizes a corporation during his employment to carry on a rival business after the expiration of this term of employment. *Plastics Research & Development Corporation v. Norman,* 243 Ark. 780, 422 S.W.2d 121 (1967); *Hamilton*

*Depositors Corporation v. Browne,* 199 Ark. 953, 136 S.W.2d 1031 (1940); *accord,* 56 C.J.S. *Master and Servant* § 70 (1948). Although an employee may lawfully plan to compete with his employer, it is also well established that an employee has a duty not to do disloyal acts in anticipation of future competition. *Lowndes Products, Inc. v. Brower,* 259 S.C. 322, 191 S.E.2d 761 (1972); *see also James C. Wilborn & Sons, Inc. v. Heniff,* 95 Ill.App.2d 155, 237 N.E.2d 781 (Ct.App.1968); *Hercules Packing Corporation v. Steinbruckner,* 28 A.D.2d 635, 280 N.Y.S.2d 423 (1967), *appeal dismissed,* 20 N.Y.2d 757, 283 N.Y.S.2d 174, 229 N.E.2d 842 (Ct.App.1967). Thus, in making arrangements to compete, an employee may not use confidential information peculiar to his employer's business and acquired through the course of employment. Restatement (Second) of Agency, § 393, Comment e, (1958); *accord, Town and Country House and Homes Service, Inc. v. Evans, supra; Allen Manufacturing Company v. Loika,* 145 Conn. 509, 144 A.2d 306 (1958). In addition, an employee may not solicit customers before the end of his employment or do other similar acts in direct competition with the employer's business. Restatement (Second) of Agency, § 393, Comment e, (1958); *accord, Maryland Metals, Inc. v. Metzner, supra; Becker v. Bailey,* 268 Md. 93, 299 A.2d 835 (Ct.App.1973).

Appellees rely upon *Lincoln Stores, Inc. v. Grant,* 309 Mass. 417, 34 N.E.2d 704 (1941) as support for the proposition that, even during employment, an employee may compete with his employer if he does so in good faith. Appellees' reading of this case is too broad. The *Lincoln* court restricted its approval of competition to directors or officers of a corporation. However, even if this case may be so read, the soundness of this proposition is questionable. Other authorities state that an employee may only make arrangements to compete and cannot properly engage in actual competition. Restatement (Second) of Agency, § 393, Comment e (1958); 3 Am.Jur.2d *Agency* § 222 (1962); *accord, Pratt v. Shell Petroleum Corporation,* 100 F.2d 833 (10th Cir. 1938),

*cert. denied,* 306 U.S. 659, 59 S.Ct. 775, 83 L.Ed. 1056 (1939); *see also Hercules Packing Corporation v. Steinbruckner, supra; James C. Wilborn & Sons, Inc. v. Heniff, supra.* Assuming, without deciding, however, that this proposition is correct, appellants, by alleging that appellees, Isengard, Watkins, Hollins and Thrash, used appellant's records and papers to prepare Career's competitive proposal charge that these appellees did not compete in good faith. Moreover, in *Lincoln,* the court affirmed an award of damages based partly on the use of confidential information by a competing director. By this affirmance, the court indicated that such a use was not competition in good faith. In concluding that appellant has sufficiently alleged that appellees, Isengard, Watkins, Hollins and Thrash, did not compete in good faith, we recognize that appellant is a non-profit corporation and that thus some of its records and papers may be a matter of public record. However, appellant may have other records and papers which are confidential. Therefore, the allegation that these appellees used appellant's records and papers to prepare Career's competitive proposal is sufficient to allege a use of confidential information.

 Judged against the foregoing legal principles, we conclude that, as alleged in Count II of appellant's complaint, the actions of appellees, Isengard, Watkins, Hollins and Thrash, were not merely preparations to compete with appellant at the expiration of their employment but instead constituted a breach of their duty of loyalty to appellant. This conclusion is based upon the allegations that these appellees were instrumental in the formation of Career; that Career was organized to apply for the same funding for which appellant was applying; that these appellees prepared Career's competitive proposal and used appellant's records and papers for this preparation; and that these appellees made it publicly known that if appellant were awarded the funding contract, they would resign from their employment with appellant and if Career were funded, they would seek employment with it.

 Furthermore, we conclude that Count II of the appellant's complaint states an actionable civil conspiracy. It is clear that a conspiracy to injure another's business which results in damages is actionable. *James C. Wilborn & Sons, Inc. v. Heniff, supra* ; 16 Am.Jur.2d *Conspiracy* § 53 (1964); *see also Monroe College of Optometry v. Goodman,* 332 Ill.App. 78, 74 N.E.2d 153 (1947). Appellant's allegations are sufficient to state a cause of action under this theory. Appellant alleges directly that appellees conspired and combined with each other to prevent the award of the funding contract to appellant; appellant also alleges adequate circumstances from which a conclusion of the existence of the conspiracy may be reasonably inferred. In addition, appellant's allegations concerning the formation of Career by appellees, Isengard, Watkins, Hollins and Thrash, the purpose for which Career was organized, the circumstances surrounding the preparation of Career's competitive proposal, and the announcement of the intent of these appellees to resign from their employment with appellant are sufficient charges of the wrongful acts done pursuant to the conspiracy. Finally, those allegations concerning the health of appellant's organization before the hiring of these appellees and the present financial position of appellant as a result of the conspiracy and the direct allegation of damages is an adequate charge of damages. In reaching this conclusion, we note that with respect to those other defendants named in Count II of appellant's complaint and not parties to this appeal, no cause of action is stated.

*Appellant's Status as a Non-profit Corporation and Appellees' Duty of Loyalty*

 Appellees argue that appellant's status as a non-profit corporation dependent upon public funds for its existence affects appellees' usual duty of loyalty. Essentially, appellees argue that an employee of such a corporation owes no duty of loyalty to the employer. We disagree. *See Rywalt v. Writer Corporation,* 526 P.2d 316

(Colo.App.1974). In stating our disagreement, we note that appellees cited no authority in support of their position. Furthermore, assuming without deciding that, in the instant case, the usual duty of loyalty owed an employee to an employer should be viewed in the light of another general duty of loyalty owed to the public, we cannot say as a matter of law that this latter duty, if its exists, sanctions appellees' use of appellant's records and papers to prepare Career's competitive proposal.

Thus we conclude that the trial court erred in dismissing Count II of appellant's complaint for failure to state a cause of action under Rule 12(b)(6). Section 21–1–1(12)(b)(6), *supra.* The order of the trial court is reversed with respect to this count and the cause is remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

SUTIN, J., specially concurs.

HERNANDEZ, J., concurs in result only.

SUTIN, Judge (specially concurring).

I specially concur.

The reason Count II of plaintiff's complaint was dismissed was failure to state a claim upon which relief can be granted. After extensive oral arguments, the district court summarily ruled, without reason or authority, that plaintiff's complaint be dismissed. It was not dismissed with prejudice. If any reasons had been stated, plaintiff would have a peremptory right to amend. *Buhler v. Marrujo,* 86 N.M. 399, 524 P.2d 1015 (Ct.App.1974).

Count II was lost in the milieu of complex issues raised in three other counts. Defendants' oral argument did not approach the result achieved. If plaintiff had submitted a memorandum brief to the court on Count II, the adverse ruling might have been avoided. Trial lawyers must remember that when complicated claims and a motion to dismiss are filed, the court often "shoots from the hip" to dispose of the case. A year is lost in delay and expenses of appeal mount. Thus it has been and thus it will always be.

All that a complaint has to state is "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Section 21–1–1(8)(a), N.M.S.A. 1953 (Repl. Vol. 4). "All pleadings shall be so construed as to do substantial justice." Rule 8(f). The function of pleadings under these rules is to give fair notice of the claim asserted so as to enable the adverse party to answer and prepare for trial. 2A Moore's Federal Practice ¶ 8.13 (1975). "Notice pleading" mandated by Rule 8(a) requires a complaint to be construed liberally and fair notice of the nature of the action will withstand a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint adequately complied with "fair notice pleading."

I repeat once again:

"The time has come to recognize that justice does not mean 'hang in haste and try at leisure.' It means to do justice; to see justice done. . . . " *Rice v. Gideon,* 86 N.M. 560, 564, 525 P.2d 920, 924 (Ct.App.1974), Sutin, J. dissenting.