(257 P.3d 1272)

No. 104,995

CITY OF MULVANE, KANSAS, *Appellee*, v. ERIC HENDERSON, *Defendant*, MIDWEST LEAGACY, LLC, a/k/a MIDWEST LEGACY, LLC, *Appellant*, D&D SIMPSON FAMILY, LLC, *Intervenor/Appellee*, MARK E. DODDS, CPA, *Receiver.*

Opinion filed July 8, 2011.

*Shaye L. Downing* and *Vernon L. Jarboe*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for appellant.

*Paula D. Langworthy* and *James A. Walker*, of Triplett, Woolf & Garretson, LLC, of Wichita, for appellee.

*H. Douglas Pfalzgraf*, of Pfalzgraf Law Offices, of Wellington, for intervenor/appellee.

Before MALONE, P.J., PIERRON and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: Midwest Leagacy, LLC, a/k/a Midwest Legacy, LLC (Midwest), purchased the Mulvane Mobile Home Park (the Park) from the D&D Simpson Family, LLC ( D&D). The City of Mulvane, Kansas (the City), provided sewer service to the Park. When Midwest failed to pay the sewer fees, the City filed an action against Midwest to collect and to disconnect sewer service to the Park. D&D, which still held an installment contract on the Park, was allowed to intervene. Subsequently, at the request of D&D, a receiver was appointed to collect the income from the Park, pay the bills, and generally maintain the Park during the pendency of the contract dispute. Finding that the district court abused its discretion when it failed to consider other adequate remedies prior to appointing a receiver, we reverse and remand with directions.

## FACTS AND PROCEDURAL HISTORY

In 2004, the City entered into a Sewer Service Agreement (the Agreement) with Dana Bruce Simpson and Debra J. Simpson (the Simpsons) covering the Park, which is located outside the city limits of the City. In the Agreement, the Simpsons and the City agreed that the City would provide sewer services to the Park in return for monthly payments and the Simpsons would obtain a liability insurance policy. The Simpsons later transferred ownership of the Park to D&D.

In 2009, D&D sold the Park to Midwest under an installment contract. In their contract for sale, D&D and Midwest agreed that the sale included all pending contracts as well as all approvals and authorizations by governmental authorities which were transferrable and which were required in connection with the operation of the Park. There was no provision in the Agreement regarding assignment to others, and no formal agreements were ever entered between Midwest and the City regarding assignment of the Agreement. The City began billing Midwest for sewer service.

In January 2010, the City sent Midwest a notice that it had breached the Agreement for failing to pay the monthly sewer fees. In addition, the City informed Midwest that in accordance with

the Agreement, it would disconnect the sewer service to the Park for nonpayment on March 15.

On March 9, 2010, the City filed a petition in district court asserting that Midwest had breached the Agreement by failing to pay the monthly sewer fees. The City requested a declaratory judgment so that the City could disconnect sewer services to the Park. In addition, the petition asked the district court to find that Midwest breached the Agreement by failing to pay the sewer fees and failing to obtain liability insurance.

On June 29, 2010, while the declaratory judgment and breach of contract action was still pending, the City sent a notice to Midwest that it would disconnect sewer services on August 30, 2010, for nonpayment of sewer fees. (The insurance issue had apparently already been resolved by a policy effective May 12, 2010.) The next day, the City filed a motion in the pending action requesting that the district court appoint a receiver to collect the rents at the Park, to pay expenses of the Park, to maintain the premises, and to create an accounting for receipts and disbursements related to the Park. The City asserted that if a receiver was not appointed it would disconnect sewer services to the Park on August 30, 2010, which would create irreparable injury to the tenants of the Park.

A week later, on July 8, 2010, D&D filed a motion to intervene in the matter between the City and Midwest pursuant to K.S.A. 60-224(a)(2) and K.S.A. 60-219. In the motion, D&D asserted that it had an interest in the real property associated with the Park and the outcome of the case could have a direct impact on D&D. If the City discontinued sewer service to the Park, the value of the property would diminish significantly, thus damaging D&D's interest.

On July 13, 2010, Midwest paid the City all amounts owing on the Agreement.

On August 25, 2010, at the hearing on the motion to intervene, D&D indicated that it was still the owner of record of the Park, and that as such it was both a necessary party and a real party in interest. In addition, D&D asserted that it had filed a petition for foreclosure against Midwest in a separate lawsuit. Cancellation of D&D's contract for sale with Midwest in the foreclosure action

would return D&D to the position it was in before the contract, that being a party with the City in the Agreement. Moreover, D&D was concerned over the preservation of the value of the Park, because if sewer services were disconnected the value of the Park would substantially decline.

In opposition to the motion to intervene, Midwest argued that because of the separate lawsuit between Midwest and D&D regarding foreclosure, D&D's interest would be adequately represented in that lawsuit; therefore, there was no basis to allow it to intervene. However, Midwest also asserted that the contract for sewer services was actually between D&D and the City and its enforceability as to Midwest was questionable. D&D countered that this made it even clearer that it had a sufficient interest in the litigation to be allowed to intervene. The City did not object to the intervention by D&D. The district court granted D&D's motion to intervene because the contract at the center of the litigation was "still with [D&D]." In the subsequent journal entry, the district court ruled that D&D was allowed to intervene pursuant to K.S.A. 60-224 because it was the seller "on installments of the real and personal property involved herein."

The district court next took up the City's motion for the appointment of a receiver pursuant to K.S.A. 60-1301. The district court determined that the City did not have the right to have a receiver appointed because the irreparable harm it was alleging was of its own making. However, D&D did have the right to have a receiver appointed because it would suffer irreparable harm if the sewer service was disconnected by the City. Finding that it was in the interest of judicial economy, the district court granted D&D's oral motion for the appointment of a receiver. Midwest does not challenge the district court's acceptance of an oral motion from D&D; however, it does challenge the sufficiency of the evidence to justify the appointment of a receiver.

## THE MOTION TO INTERVENE

Although, on appeal, all parties discuss the issue of whether or not D&D should have been allowed to intervene, according to its notice of appeal Midwest only appealed the appointment of a re-

ceiver pursuant to K.S.A. 60-1305 and K.S.A. 60-2102(a)(3). It did not appeal the decision to allow D&D to intervene. Moreover, because the parties have the right to appeal any adverse final judgment on the merits, the *granting* of a motion to intervene is not immediately appealable. See *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375-77, 107 S. Ct. 1177, 94 L. Ed. 2d 389 (1987); *Pearcy v. First National Bank*, 170 Kan. 577, 578-79, 228 P.2d 707 (1951); *Howard v. Bank*, 107 Kan. 489, Syl. ¶ 2, 192 P. 746 (1920). It should be noted that the *denial* of a motion to intervene is an appealable final order. *Montoy v. State*, 278 Kan. 765, 102 P.3d 1158 (2005). Therefore, we are without jurisdiction to consider the district court's decision.

## THE APPOINTMENT OF A RECEIVER

Midwest next appeals the appointment of a receiver to operate the Park.

Midwest first asserts that K.S.A. 17-76,117 is the statute that governs the appointment of a receiver for limited liability companies and, it argues, the facts do not support such an appointment in this case. D&D argues that nothing in K.S.A. 17-76,117 precludes the applicability of K.S.A. 60-1301.

Interpretation of a statute is a question of law over which this court has unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009).

In reviewing the statutes, Midwest's argument fails for two reasons. First, K.S.A. 17-76,117 exclusively outlines a procedure for the involuntary dissolution of a limited liability company. This is not an action to involuntarily dissolve a limited liability company. It is an action to temporarily appoint a receiver to manage one of the company's assets, the Park, during the pendency of a contract dispute. Second, K.S.A. 60-1301, the statute specifically allowing a district court to appoint a receiver, does not exclude limited liability companies. It allows the appointment of a receiver to protect any

*business* or *business interest*. Therefore, we find that K.S.A. 60-1301 controls the appointment of a receiver in this case, not K.S.A. 17-76,117.

Finally, Midwest asserts that there were insufficient facts to support the appointment of a receiver.

A district court's decision to appoint a receiver is reviewed for an abuse of discretion. See *Johnson v. Gaskin*, 183 Kan. 728, 732, 332 P.2d 263 (1958). "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citation omitted.]" *Unruh*, 289 Kan. at 1202. An abuse of discretion may be found if a district judge's decision goes outside the framework of or fails to properly consider statutory limitations or legal standards. *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009).

K.S.A. 60-1301 grants a district court the authority to appoint a receiver to manage property and protect any business interest during the pendency of any action concerning the property.

The power to appoint a receiver is in derogation of the fundamental property right of a legal owner to the possession and improvement of his or her property because it involves a taking without an adjudication on the merits. 65 Am. Jur. 2d, Receivers § 10, p. 630. Our Supreme Court has advised that only in cases of greatest emergency are courts warranted in restricting a business or property by the appointment of a receiver. There must be some evidence that the appointment is necessary to prevent fraud or to save the subject of the litigation from material injury or to rescue it from threatened destruction. In addition, a receiver should only be appointed when there is no other adequate remedy available. *Browning v. Blair*, 169 Kan. 139, 145, 218 P.2d 233 (1950).

In this case, the City filed the motion to appoint a receiver. The City indicated that if a receiver were not appointed, the City would disconnect the sewer services to the Park, which would result in immediate and irreparable injury to the tenants who own and reside in the homes in the Park. The impetus behind the motion was Midwest's failure to pay sewer fees totaling over $17,000, and the

City's position that it was not going to voluntarily do business with the owner of Midwest, Eric Henderson. As to the City's position, at the hearing on the motion the district court correctly pointed out that it was "a little disingenuous [for the City] to say, stop us from ourselves." This is particularly true given the fact that it was the City that filed the lawsuit requesting the district court to decide whether the contract had been breached and whether it was within its contractual rights to disconnect sewer service to the Park. At some point, the City apparently decided that it was not going to wait for a trial on the merits or for the district court to make the requested findings in its contract dispute. Unless "somebody says, with legal authority that we can't," the City intended to deem the contract breached and disconnect sewer service 5 days after the hearing if the court did not appoint a receiver. This was despite the undisputed evidence that all sums owing had been paid by the time of the hearing.

D&D presented testimony that the disconnection of the sewer system would be detrimental to the Park. Furthermore, the appointed receiver indicated that if the sewer service was disconnected to the Park, the value of the Park would decrease to the worth of raw real estate.

Finding that there were not sufficient facts for it to appoint a receiver at the City's request, the district court held that there were sufficient facts to appoint a receiver at D&D's request because it would suffer irreparable harm if the City followed through with its threat.

In reviewing the district court's ruling, the fact remains that the underlying case is a simple contract dispute. The City believes it has a contract with Midwest, which Midwest has breached. The City believes it has the authority to disconnect sewer service to the Park. Midwest challenges the existence of a contract and challenges the allegation that any contract was breached. Midwest paid all sums owing by the time of the hearing, even though it disputed the existence of a contract. Furthermore, Midwest was up-to-date on its payments on the installment contract with D&D. There was no evidence presented of an imminent danger of continued non-payment of sewer fees by Midwest. There was no evidence of fraud

or mismanagement on the part of Midwest. There was no indication that the merits of the underlying contract dispute could not have been quickly resolved by the court. The only possible harm to the property, diminution in value, would be a result of the City's actions, not Midwest's actions. Yet it was Midwest's fundamental right as a property owner to manage its own property that would be impacted by the district court's order appointing a receiver. The appointment of a receiver was an emergency of the City's own making based on its position that it simply was not going to deal with Eric Henderson anymore, telling the district court, "[W]e're done with him."

D&D found itself in the middle of the dispute. It clearly faced immediate and irreparable injury to real property in which it had an interest if sewer service was disconnected by the City. However, there was insufficient evidence that the appointment of a receiver was the appropriate remedy. Although the City raised the possibility of other remedies, such as injunctive relief, and discussed the fact that Midwest could set up some alternative method of sewage disposal, the district court did not consider any alternatives to the appointment of a receiver. Other remedies, such as a temporary injunction prohibiting the City from disconnecting sewer service during the pendency of the litigation or posting a bond to guarantee payment of sewer fees to the City during the pendency of the litigation, are just two examples which would have been less severe, equally as effective, and more appropriately targeted to the party who was threatening to do the harm. The City even admitted during the hearing that "the appointment of a receiver is only one of the options here." Given the fundamental property rights that are affected when the court steps in and appoints a receiver, the district court abused its discretion by not considering other adequate remedies for the threatened harm.

The district court order appointing a receiver is reversed, and the case is remanded for the district court to fully consider other adequate remedies to protect D&D's interests until such time as the underlying case is adjudicated on the merits.

Reversed and remanded with directions.