NOT DESIGNATED FOR PUBLICATION

No. 122,061

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DELAWARE RIDGE HOMES ASSOCIATION INC.,
*Appellee*,

v.

DEBORAH D. MADDY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WILLIAM P. MAHONEY, judge. Opinion filed June 11, 2021. Affirmed and remanded.

*Shane Lillich*, of Perry & Trent, LLC, of Bonner Springs, for appellant.

*Rod Hoffman*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Overland Park, for appellee.

Before GREEN, P.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: This is an interlocutory appeal from the district court's denial of Appellant Deborah D. Maddy's motion to appoint a receiver for appellee, Delaware Ridge Homes Association, Inc. (Delaware Ridge or the Association). The parties raise additional issues from their dispositive briefs, but those have not been fully litigated and are beyond the scope of Maddy's appeal. Having reviewed the record, we conclude that the district court did not abuse its discretion by denying Maddy's motion to appoint a receiver. We find the district court acted reasonably by concluding that Maddy failed to produce evidence of either an exigent circumstance or fraud that necessitated the

1

appointment of a receiver. Additionally, we believe the district court reasonably found that the costs of appointing a receiver outweighed the suggested benefits. Accordingly, we affirm the district court's conclusion and remand for further proceedings.

FACTS

On October 21, 2015, Delaware Ridge filed a petition against Maddy, a homeowner in the Delaware Ridge subdivision in Wyandotte County, for unpaid homeowners' assessment fees. On November 24, 2015, Maddy filed her answer with counterclaims alleging, among other things, that Delaware Ridge was acting in violation of the contract, the Kansas Consumer Protection Act, and the Fair Debt Collection Practices Act.

Following two years of discovery, on October 17, 2017, Maddy filed a "Motion for Temporary Injunction and Motion to Join Third Party Defendants." In her motion, Maddy argued that Delaware Ridge is a "sham" corporation that is "unlawfully operated" and requested that a receiver be appointed pursuant to K.S.A. 60-1304, to operate Delaware Ridge until an "independent" operation could be established. In support, Maddy contended that Delaware Ridge lacked bylaws, that it was being improperly operated by the subdivision developers, that it was not operating consistently with state statutes that govern neighborhood associations, and that it lacked authority to collect association fees as a result of its unlawful operation.

On November 17, 2017, the district court held an initial hearing on Maddy's motion for injunctive relief. However, the court did not reach a resolution since Maddy's attorney requested that a ruling on the motion be stayed. On February 15, 2018, the district court held a status conference and ordered briefing on Maddy's motion. In addition, the district court indicated that Maddy had not requested appointment of a receiver during the status conference.

On February 14, 2018, Delaware Ridge filed its first motion for summary judgment, disputing Maddy's counterclaims under the Kansas Consumer Protection Act and the Fair Debt Collection Practices Act. In addition, Delaware Ridge challenged Maddy's standing to bring her counterclaims outside a class-action proceeding because Maddy's claims affected similarly situated homeowners. In support of its motion, Delaware Ridge submitted a certificate of good standing from the Kansas Secretary of State and a copy of Delaware Ridge's "Declaration of Easements, Covenants, Conditions and Restrictions."

Meanwhile, on March 15, 2018, in an apparent attempt to address the issues raised in both Maddy's counterclaims and Maddy's motion for injunctive relief, Delaware Ridge filed a "Motion for Permission to Allow the Residents to Elect Directors." In this motion, Delaware Ridge explained that the developer was only in control of the Association while the subdivision was being completed, which, according to Delaware Ridge, was fast approaching. In addition, Delaware Ridge indicated agreement with Maddy that it "also desires to have its homeowners hold an election and operate the Association." Delaware Ridge proposed holding a board election and transferring control directly to the homeowners, which it contended would be "mutually beneficial to both parties" and would "significantly eliminate future discovery and issues in the trial of this matter."

On June 7, 2018, the district court set a hearing on multiple pending motions, including: Maddy's motion for injunctive relief, Delaware Ridge's first motion for summary judgment, Delaware Ridge's motion for a board election, and two pending discovery motions. A transcript of the hearing, which was held on June 13, 2018, is not included in the appellate record. However, on the same day, the district court provided a handwritten entry indicating that the attorneys agreed to "supervise/monitor" a board election and that the court "need[ed] to appoint [an] attorney to do home [association] election and notices of turnover process." Specifically, by e-mail on June 19, 2018, the

3

district court suggested that an independent party, Dana Bye, be appointed to facilitate the board election.

On July 17, 2018, after having an opportunity to interview Bye, Maddy filed a document entitled "Defendant's Suggestions for Administration of Turnover of Delaware Ridge Homes Association, Inc.'s Single Family Homes from Developer to Member Control." As part of her suggestions document, Maddy indicated that "she has no objections to Mrs. Bye handling this administration and appreciates the Court's recommendations of Mrs. Bye for this purpose." However, Maddy asserted that Bye should be appointed as a "receiver," under either K.S.A. 50-637 or K.S.A. 60-1301, to administer both the board election and the turnover of Delaware Ridge to homeowner control.

For the next seven months, the parties attempted to informally resolve their differences regarding the scope of Bye's appointment. During this time span, on October 30, 2018, the district court held another hearing on Delaware Ridge's motion to hold a board election. At the hearing, Delaware Ridge indicated that the final lots of the subdivision would soon be sold, and once again indicated that it was eager to pass control of the Association to the homeowners. Nevertheless, Maddy continued to object to Bye's appointment as anything less than a legally empowered "receiver" under Kansas statutes.

Ultimately, the district court denied Maddy's request that Bye be appointed as a receiver, and made the following relevant comments to counsel from the bench:

> "THE COURT: Well, Mr. Lillich [Maddy's counsel], let me just ask you, though. This isn't a huge amount of transactions between homeowners and the association—in this case, associations of all three groups of people. They pay a certain monthly or annual amount and that money goes into an account. The same managers or servicers are the ones that are applying that.

4

"That is just what I wanted to get away from. I think that what I'm trying to do—which I think is helpful to your client and everybody out there—is to remove the developers from this board. I'm not appointing—at this point, you haven't convinced me that we need to have a receiver. I think there's been nothing demonstrated to me that the Plaintiff in this case was sitting on mounds of money and that, during the time period that your client has lived out there, this money has been spent on anything other than the common areas.

"You've gone through a lot of discovery here trying to figure out what money has been spent on which part. In terms of who's in charge of the association, it doesn't—it's sort of—for want of a better description, I just don't see the point in waiting to do this. But I also don't see the point in paying for a receiver because I don't think it's necessary."

Instead, the district court discussed the scope of Bye's appointment:

"MR. LILLICH:  Okay, Your Honor. And I appreciate that. And, respectfully, may I ask what capacity it is that Ms. Bye is being appointed?

"THE COURT:  Okay. If you go back and look at the initial—the initial communication was that we wanted to appoint someone because your client didn't want somebody—didn't want them to do it, basically. Didn't want them to set up an election of another new board. So we contemplated having someone appointed that knows what they're doing. We had a discussion that Ms. Bye has been involved with her own homeowners. She went through a transition out where she is, that there was a dispute over some common areas out there. You know, who gets to use the pool; who gets to use the pond, whatever. So I think she's intimately familiar with this mixed-use set up.

"MR. LILLICH:  Okay.

"THE COURT:  So she knows how to accomplish sending out the notices.

"MR. LILLICH:  And we've interviewed Ms. Bye.

"THE COURT:  Right.

"MR. LILLICH:  And we are confident that she is competent to do that.

"My question, Judge, again, respectfully, what is the capacity of her appointment? What do we call her?

"THE COURT:  I think, at this point, I'm just appointing her to—for want of a better term, to organize and facilitate a process to replace the home association with

5

residents. And that would contemplate under the bylaws and under the statute with all the notice requirements and how to tabulate votes. Basically, just the P's and Q's on how you set that up to appoint a new board.

"But I'm not appointing her as a case manager, a receiver. Her task is to follow the bylaws that are in place; set up an election; send out the notices; set up a time and place to elect a new board. Once the new board is in place and elected, then you have a board of residents that's going to determine what happens in 2019 and beyond."

Subsequently, on January 10, 2019, the district court issued a journal entry formally appointing Bye "to oversee an election of directors of Delaware Ridge Homes Association." In its order, the district court also outlined the scope of Bye's duties including: sending election notices to homeowners, distributing and counting ballots, and obtaining the resignation of the current board members following the conclusion of the election.

A few months later, on April 23, 2019, more than three years after Maddy had filed her original petition, Delaware Ridge filed a second motion for summary judgment on its claim for Maddy's unpaid annual assessment fees, in the amount of $3,600. On May 14, 2019, Maddy filed a response to Delaware Ridge's second summary judgment motion. In her response, Maddy repeated the arguments raised in her motion for injunctive relief, contending that Delaware Ridge was a sham corporation which was not lawfully organized or lawfully operated. As a result, Maddy argued that Delaware Ridge lacked standing to collect assessments from homeowners. In support, Maddy asserted nearly identical arguments to those raised in her motion for injunctive relief, in particular: that Delaware Ridge lacked a board of directors and bylaws; that Delaware Ridge did not hold meetings, prepare a budget, or allow residents to vote; and that Delaware Ridge was not operating consistently with state statutes that governed neighborhood associations. Maddy attempts to raise many of these same arguments in her brief on appeal.

On July 30, 2019, the district court signed a journal entry indicating that Bye had been excused from her duties. However, it is unclear from the record and the journal entry why Bye was excused. Maddy asserts that the district court e-mailed the parties to explain the reasons for Bye's removal. However, that e-mail is not included in the appellate record.

In addition, Maddy claims that the district court also held a phone hearing to explain its removal decision. Apparently no stenographic or audio recording of this hearing was made, because no transcript of any phone hearing of this sort appears in the record. Maddy asserts that the district court never prepared a journal entry from that hearing. We note from a recent motion filed by Maddy's counsel in the appellate clerk's office that Maddy is seeking a delay in these appellate proceedings in order to procure a written journal entry reflecting the district court's comments or ruling from that phone hearing to add to the record. However, we have denied that motion, since we believe that whatever the district court's reasons might be for removal of Bye from her rather unorthodox designation as a "organizer/facilitator/overseer" for the parties are ultimately immaterial to the question of whether the district court abused its discretion by denying Maddy's request for the formal appointment of Bye as a receiver.

In the same July 30, 2019 journal entry, the district court also scheduled a hearing on Delaware Ridge's second summary judgment motion for August 23, 2019.

But on August 13, 2019, before the district court could reach a resolution on Delaware Ridge's summary judgment motion, Maddy filed a notice of appeal regarding the district court's decision to not appoint Bye as a receiver. Then, on September 23, 2019, Maddy filed a motion to stay the scheduled hearing on Delaware Ridge's second summary judgment motion pending resolution of her appeal.

Over Delaware Ridge's objection, on September 25, 2019, the district court granted Maddy a partial stay, allowing discovery to proceed but postponing resolution of Delaware Ridge's second motion for summary judgment motion, pending resolution of this interlocutory appeal of the district court's decision not to appoint a receiver. In the same order, the district court also summarized "its findings and conclusions" in support of its decision to deny appointing Bye as a receiver.

In particular, the district court ruled, in relevant part, as follows:

"'Relief by way of receivership is equitable in its nature and is controlled by and administered upon equitable principles.' *Geiman-Herthel Furniture Co. v. Geiman*, 162 Kan. 48, 60, 174 P.2d 117 (1946). Our Supreme Court has found that only in cases of greatest emergency are courts warranted in restricting a business or property by the appointment of a receiver. There must be some evidence that the appointment is necessary to prevent fraud or to save the subject of the litigation from material injury or to rescue it from threatened destruction. In addition, a receiver should only be appointed when there is no other adequate remedy available.' [*sic*] *City of Mulvane* [*v. Henderson*], 46 Kan. App. 2d [113,] 118[, 257 P.3d 1272 (2011) (citing *Browning v. Blair*, 169 Kan. 139, 145, 218 P.2d 233 [1950]). Thus, the power to appoint a receiver 'is not properly exercised in any case where there is no fraud or imminent danger of the property sought to be reached being lost, injured, diminished in value, destroyed, wasted or removed from the jurisdiction.' *Browning*, 169 Kan. at 145. Furthermore, a receiver 'should never be appointed where it may do irreparable injury to others or where greater injury is likely to result from such appointment than that if none were made.' 169 Kan. at 145.

"In this case, the Defendant has failed to demonstrate that this is a case of greatest emergency and needs the appointment of a receiver. The Defendant requested the appointment of a receiver after the court offered to appoint someone to monitor the election of a new board of directors for [Delaware Ridge] made up of residents and the Defendant wanted to give receiver-type powers to the appointee, beyond what the Court ordered or believed necessary to accomplish the goal of establishing a board made up of single family homeowners similarly situated to the Defendant. Mere allegations of fraud without the added requirement of imminent danger of the property being lost, injured or

8

diminished in value, destroyed, wasted or removed do not warrant appointment of a receiver. Furthermore, this Court finds that a receiver is unnecessarily costly with little benefit to the homeowners and the Defendant in this case. This litigation concerns the typical situation of homeowners paying annual fees and [Delaware Ridge] paying management fees and expenses to maintain the common areas and the property out of those funds. Appointment of a receiver would cause unnecessary delay and costs with no benefit to the litigation or the parties.

"In *Browning*, the district court correctly balanced the equities to hold that the relatively low disputed trust fund amount compared to the high cost of a receiver did not warrant the appointment of a receiver in this case: 'Considering the costs of a receiver, the fact that neither trust had a deficit and the proposed trustee's two other cemetery trust cases involved trusts which were underfunded by $800,000.00 and $650,000.00, the appointment of a receiver here is not warranted.' Specifically, the district court found that a receiver would charge $265 per hour as well as the expenses of discovery and hiring accountants. Even if the district court was correct in its finding that the fund had a surplus of as much as $31,000, paying the hourly rate of the receiver would quickly use up that overfunding in a matter of weeks (assuming the receiver worked 8 hours per day, 5 days per week, his weekly cost would be around $10,000) and begin to eat into the trust amounts needed to pay for merchandise and maintenance owed to consumers. This evidence supports the district court's conclusion that appointing a receiver would create a greater injury than if no appointment were made. See *Browning*, 169 Kan. at 145."

Notably, the district court's interlocutory appeal order did not address any of the additional issues raised in either Maddy's motion for injunctive relief or Delaware Ridge's summary judgment motions. Specifically, the district court did not address Maddy's counterclaims that Delaware Ridge was in violation of the contract, the Kansas Consumer Protection Act, and the Fair Debt Collection Practices Act. In addition, the district court did not make any factual findings regarding Maddy's assertions that Delaware Ridge was a sham and was unlawfully operated. Similarly, the district court also did not address Delaware Ridge's underlying claim for unpaid assessment fees or Delaware Ridge's argument that Maddy lacks standing to bring her suit outside of a class-action proceeding. Instead, citing K.S.A. 60-2102(a)(3) and K.S.A. 60-1305, the statutes governing

9

interlocutory appeals from a district court decision appointing a receiver, the district court's order was narrowly limited to its decision not to appoint Bye as a receiver under Kansas statute.

ANALYSIS

At the outset, we must first address the scope of this interlocutory appeal. We do so because the parties raise numerous issues that are far beyond the scope of both Maddy's notice of appeal and the district court's interlocutory appeal order. Instead, both the notice of appeal and the district court's interlocutory appeal order are solely focused on the district court's denial of the appointment of a receiver. Further, both the notice of the appeal and the interlocutory appeal order cite the statutes granting interlocutory appeal from district court orders "appointing or refusing to appoint a receiver," as the sole source of this court's appellate jurisdiction. In fact, our research reveals that the only legal authority for Maddy's appeal is the express authority granted by K.S.A. 2020 Supp. 60-1305 expressly authorizing interlocutory appeals from a district court's refusal to appoint a receiver. As a result, this appeal, and our resolution of this dispute, must be narrowly focused on addressing the district court's decision not to appoint Bye as a receiver under Kansas law.

Despite the limited scope of this appeal, Maddy and Delaware Ridge attempt to litigate additional issues beyond the receiver issue. For instance, Maddy raises additional arguments which she previously raised in her counterclaims, her motion for injunctive relief, and her response to Delaware Ridge's second motion for summary judgment. In particular, Maddy argues at length that Delaware Ridge is a sham and is unlawfully operated. As a result, Maddy attempts to broaden her appeal in order to litigate the substance of her counterclaims:  that Delaware Ridge is in violation of its contract, the Kansas Consumer Protection Act, and the Fair Debt Collection Practices Act.

10

Similarly, and likely feeling compelled to do so by the breadth of arguments in Maddy's appellate brief, Delaware Ridge also raises additional arguments that it previously raised in its first motion for summary judgment. Specifically, Delaware Ridge argues that Maddy lacks standing to bring her case outside of a class-action proceeding and that the Kansas Consumer Protection Act and Fair Debt Collection Practices Act are not applicable to claims against homeowner's associations.

However, none of the additional issues raised by either party are within the scope of the notice of appeal or the interlocutory appeal order by the district court. As a result, we are not at liberty to consider them. Additionally, we note that the district court has yet to make factual findings or conclusions of law regarding these additional issues. Instead, the record indicates that the district court stayed dispositive rulings on the underlying claims and counterclaims pending the resolution of this interlocutory appeal. Consequently, in addition to being beyond the scope of our appellate jurisdiction, the additional issues raised by the parties have not been finally resolved; and they are, therefore, not ripe for appellate review. Therefore, we rightly limit our focus to determining whether the district court abused its discretion in not appointing a receiver.

A district court's decision to appoint a receiver is reviewed for an abuse of discretion. *City of Mulvane v. Henderson*, 46 Kan. App. 2d 113, 118, 257 P.3d 1272 (2011). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

K.S.A. 60-1301 grants a district court the authority to appoint a receiver to manage property and protect any business interest during the pendency of any action concerning the property. Appointment of a receiver is equitable in nature. *Geiman-Herthel Furniture*

11

*Co. v. Geiman*, 162 Kan. 48, 60, 174 P.2d 117 (1946). Accordingly, our Supreme Court has held that only in cases of greatest emergency is a district court warranted in restricting a business or property by the appointment of a receiver. Specifically, "the power to appoint a receiver is limited almost exclusively to cases where it is necessary in order to prevent fraud, to save the subject of litigation from material injury, or to rescue it from threatened destruction. It is not properly exercised in any case where there is no fraud or imminent danger of the property sought to be reached being lost, injured, diminished in value, destroyed, wasted or removed from the jurisdiction." *Browning v. Blair*, 169 Kan. 139, 145, 218 P.2d 233 (1950). Further, our Supreme Court has made clear that a receiver should only be appointed when doing so "is absolutely necessary and there is no other adequate remedy." See 169 Kan. at 145.

In its interlocutory appeal order, the district court provided several justifications for its decision to not appoint Bye as a receiver. First, the district court held that Maddy had failed to demonstrate exigent circumstances to necessitate the appointment of a receiver. Specifically, the district court concluded that Maddy had failed to demonstrate evidence of financial fraud.

In making this finding, the district court indicated that the purpose of appointing Maddy to oversee a board election was an attempt to facilitate Maddy's stated request for transfer of the Association to homeowner control. According to the court, only after the district court made its proposal to have a third party facilitate the transfer did Maddy suggest that Bye be granted full responsibilities as a statutory receiver. Reviewing the transcript of the October 30, 2018 hearing, it appears that Maddy was primarily concerned with ensuring the proper separation of the Association's resources from Delaware Ridge's general funds. In response, the district court noted that the Association's funds were not large, and, despite lengthy discovery, Maddy had failed to show that Delaware Ridge had mismanaged association dues.

12

Specifically, at the hearing, the district court commented:

"THE COURT: Well, Mr. Lillich, let me just ask you, though. This isn't a huge amount of transactions between homeowners and the association—in this case, associations of all three groups of people. They pay a certain monthly or annual amount and that money goes into an account. The same managers or servicers are the ones that are applying that.

"That is just what I wanted to get away from. I think that what I'm trying to do—which I think is helpful to your client and everybody out there—is to remove the developers from this board. I'm not appointing—at this point, you haven't convinced me that we need to have a receiver. I think there's been nothing demonstrated to me that the Plaintiff in this case was sitting on mounds of money and that, during the time period that your client has lived out there, this money has been spent on anything other than the common areas.

"You've gone through a lot of discovery here trying to figure out what money has been spent on which part. In terms of who's in charge of the association, it doesn't—it's sort of—for want of a better description, I just don't see the point in waiting to do this. But I also don't see the point in paying for a receiver because I don't think it's necessary."

As a result, the district court held that Maddy's allegations of fraud were factually unsupported and failed to establish an exigent financial emergency that would justify appointing a receiver.

We agree with the district court's finding and note that Maddy has not cited any evidence to rebut the district court's factual finding regarding the lack of clear financial fraud in either her appellate brief or elsewhere in the appellate record. Our Supreme Court has made it abundantly clear that appointing a receiver premised on claims of fraud must be based upon specific facts rather than mere allegations. "The words fraud and conspiracy alone, no matter how often repeated in a pleading, cannot make a case for the interference of a court of equity until connected with some specific act for which one

13

person is in law responsible to another; they have no more effect than other words of unpleasant signification." *Browning*, 169 Kan. at 147.

Additionally, on appeal Maddy characterizes Delaware Ridge as a sham homeowner's association without bylaws, meetings, or elections. But Maddy did not raise those arguments or present or proffer evidence to support them at the October 30, 2018 hearing. Similarly, Maddy did not present those arguments or evidence in support of them as part of her Suggestions for Administration, in which Maddy formally responded to the district court's proposal to have Bye facilitate a board election.

The fact that Maddy did not present any evidentiary support for her appellate argument regarding Delaware Ridge's alleged unlawful operation during the district court's discussion of Bye's appointment is further highlighted by the district court's resolution of a pending discovery dispute during the same hearing. Specifically, just moments after the district court denied Maddy's request to appoint Bye as a receiver, the district court also ordered Maddy's attorney to respond to Delaware Ridge's pending discovery request for evidence supporting Maddy's allegations that Delaware Ridge was in violation of homeowner's association regulations.

In particular, the following exchange between the district court and Maddy's attorney indicates that Maddy did not have any evidence to support her claims that Delaware Ridge was operating as a sham.

> "THE COURT: All right. So that's where we are at this point.
> "I wanted to talk about Ms. Bye and I wanted to talk about that issue.
> "So that brings us to—well, I guess that would go into the discovery issue, Mr. Hoffman [Delaware Ridge's attorney]. There was some discovery sent out from the Plaintiff to the Defendant and Mr. Lillich filed a motion for protective order in part based on the second interrogatories.

14

"And I think that what we discussed at the last hearing was that I directed Ms. Maddy and Mr. Lillich to respond but didn't have to respond to these two issues about the Consumer Protection Act or the Debt Collection Practices Act.

"So was any response made to those second interrogatories since we were here in June?

"MR. LILLICH: No. Judge, I believe, as I recall, wasn't that—well, let me take a look here.

"Judge, the reason being is that the Defendant has filed the motion to compel discovery. With that, a motion for sanctions, attorney fees, and other relief. That information that is necessary to respond to the Plaintiff's discovery is held by the Plaintiff. The discovery in this case is in flux because the Plaintiff has not properly responded to discovery.

. . . .

"MR. LILLICH: Judge, the only information we have about this case is what they've given us.

"THE COURT: That's really not responsive to what I just said. Here's my question: So you're telling me today that you can't respond to the interrogatories because you don't have the information to respond to them because they haven't provided you with the discovery? I don't want to overly summarize what you just said, but I think that's what you just said. Right?

"MR. LILLICH: Yeah, that is what I said.

"THE COURT: So, at this point, then, it seems to me these interrogatories are not that complicated. And it was basically just three questions; the last two which I said you didn't have to answer.

"So, basically, it's just asking which section of the law governing the homeowners association has been violated; when those violations were; and the facts known to you that would support that there was a violation: Documents, people that have knowledge, and damages.

"MR. LILLICH: Okay. So that would just be Interrogatory Number One—
"THE COURT: Right.
"MR. LILLICH: —to, I believe, Exhibit A of our motion for a protective order. Well, they're interrogatories as an exhibit to that motion.

"If that's the case, Judge, we'll respond to it today, to the best of my client's knowledge."

15

Given that Maddy did not present argument or evidence in support of the arguments that she raises in her appellate brief—that Delaware Ridge is a sham and is unlawfully operated—it is unsurprising that the district court made no factual findings or conclusions of law regarding these additional allegations at either the October 30, 2018 hearing or in the district court's subsequent interlocutory appeal order.

As an appellate court, we are not free to make factual findings on allegations which were not presented to the district court. Instead, based on the evidence before the district court, we conclude that the court did not abuse its discretion in finding that Maddy had not established "fraud or imminent danger of the property sought to be reached being lost, injured, diminished in value, destroyed, wasted or removed from the jurisdiction," such that the appointment of a receiver was "absolutely necessary." See *Browning*, 169 Kan. at 145.

Second, the district court also supported its decision to deny appointing Bye as a receiver based on its conclusion that the costs of a receiver would outweigh the benefits, again citing the low financial stakes of the litigation. "This litigation concerns the typical situation of homeowners paying annual fees and [Delaware Ridge] paying management fees and expenses to maintain the common areas and the property out of those funds. Appointment of a receiver would cause unnecessary delay and costs with no benefit to the litigation or the parties."

On this point, we note that Maddy similarly submitted no evidence at the October 30, 2018 hearing to support a contrary ruling. Once again, Maddy presents no evidence or argument regarding this part of the district court's conclusion on appeal. As a result, we additionally conclude that the district court did not abuse its discretion in finding that the appointment of a receiver was not absolutely necessary and that there was another, cheaper, remedy available, in the form of a facilitated board election. See *Browning*, 169 Kan. at 145.

16

In sum, we are convinced that the district court's conclusions that Maddy failed to establish evidence of exigent circumstances or specific examples of fraud to necessitate the appointment of a receiver are reasonably supported by the record. As a result, we conclude that the district court did not abuse its discretion by denying the appointment of Bye as a receiver. Accordingly, we affirm the district court's decision and remand for further proceedings.

Affirmed and remanded.